IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

WAYNE SPINKS                                                                    PLAINTIFF

V.                              NO. 3:11–CV–00296–BD

MICHAEL J. ASTRUE,
**Commissioner, Social Security Administration**                    DEFENDANT


<u>**ORDER AFFIRMING THE COMMISSIONER**</u>

Wayne Morris Spinks seeks judicial review of the denial of his applications for

disability insurance benefits and supplemental security income.[1]  This is not the first

time Mr. Spinks alleged he was disabled.  He alleged disability at ages 22, 29, 45, and

now at age 50.[2]  In this case, Mr. Spinks alleged he was disabled because of problems

with his shoulders, arms, legs, back, hands, knees, fingers, neck, and head.[3]  He

reported muscle spasms in his chest, problems with breathing, constant headaches,

depression, and disabling pain.[4]  The record substantiates few of Mr. Spinks's

allegations.

---

[1]*See* 42 U.S.C. § 405(g) (providing for judicial review of final decisions by the Commissioner of the Social Security Administration).

[2]SSA record at pp. 154.  The record indicates Mr. Spinks has applied for disability benefits even more times, but the record does not reflect alleged on-set dates for other applications.  *See id*. at pp. 172 -73.

[3]*Id*. at pp. 33, 37, 176. 192-93, 200-02, 207-10, 217-19, 222 & 237.

[4]*Id*. at pp. 176, 192-93, 202, 210, 222 & 237.

The ALJ determined that Mr. Spinks's ability to work was impaired by degenerative joint disease, hypertension, chronic obstructive pulmonary disease (COPD), and depression.[5]  In determining Mr. Spinks's residual functional capacity (RFC), the ALJ determined that he could do light work with postural limitations—specifically, work not involving overhead reaching, balancing, climbing, or hazards such as unprotected heights, moving machinery, or open flames.[6]  The ALJ limited Mr. Spinks to occasional stooping, crouching, crawling or kneeling.  The ALJ determined that, due to non-exertional limitations, Mr. Spinks could work at jobs learned by observation and experience, and jobs involving few variables, limited judgment, little supervision for routine tasks, and detailed supervision for non-routine tasks.[7]

**The ability to do light work**.  Mr. Spinks maintains that he cannot do light work because he cannot lift and/or carry 20 pounds occasionally and 10 pounds frequently.  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[8]  The ALJ's RFC determination is

---

[5]*Id*. at p. 15.

[6]*Id*. at p. 17.

[7]*Id*.

[8]20 C.F.R. §§ 404.1567(b) & 416.967(b).

2

consistent with that requirement.  Mr. Spinks argues that pain prevents him from doing

light work and that light work would likely cause an asthma attack.[9]  The record does

not support either assertion.

In determining the claimant's RFC, the ALJ must "establish, by competent

medical evidence, the physical and mental activity that the claimant can perform in a

work setting, after giving appropriate consideration to all of [his] impairments."[10]  Here,

the ALJ ordered a consultative examination to develop the record about Mr. Spinks's

RFC.[11]  The consultative examiner—Dr. Joseph Patterson—found a decreased range of

motion in Mr. Spinks's neck and narrowing of the joint at the top of his right shoulder.[12]

Because that shoulder joint allows a person to raise the arm above the head,[13] Dr.

Patterson reported that Mr. Spinks had moderate limitations in raising his arms above

---

[9]Docket entry # 12, p. 10.

[10]*Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

[11]*See Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1973) ("The ALJ has a duty to fairly and fully develop the record as to the matters at issue.").

[12]SSA record at pp. 259-61.

[13]A.H Woodward, M.D. & Laura Brasseur , 2-5 Attorneys' Textbook of Med. § 5.02 (3d ed.) ("The acromioclavicular joint is a gliding joint. As the arm is elevated, the acromioclavicular joint allows motion in all three planes.").

his head.[14]  Dr. Patterson reported no restrictions in lifting or carrying, and no postural limitations.

After reviewing Dr. Patterson's report and Mr. Spinks's medical records about complaints of right shoulder pain,[15] Dr. Bill Payne opined that the medical evidence supported medium work.[16]  Dr. Payne determined that the medical evidence established no postural limitations.[17]  Mr. Spinks contends the ALJ relied on only Dr. Payne's opinion in determining his RFC, but the ALJ's opinion reflects consideration of all the medical evidence, because the ALJ determined that Mr. Spinks could do light work, not medium work,[18] with postural limitations.

There was no basis for reducing Mr. Spinks's RFC from medium work to light work without considering all of his medical records.  For example, a CT scan of Mr.

---

[14]SSA record at p. 261.

[15]*See id*. at p. 254 (assessment of tendinitis and pain in right shoulder and elbow on Feb. 26, 2009); p. 252 (finding a full range of motion in right shoulder and right knee, but observing joints were tender on June 5, 2009); p. 277 (assessing right shoulder and right hip pain on Jan. 27, 2010).

[16]*Id*. at p. 269.

[17]*Id*. at p. 264.

[18]*Compare* 20 C.F.R. §§ 404.1567(b) & 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."), *with* 20 C.F.R. §§ 404.1567(c) & 416.967(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").

Spinks's abdomen and pelvis—taken after Dr. Patterson's exam and after Dr. Payne's opinion—showed mild degenerative changes in the spine.[19]  Over time, progressive degenerative changes can cause pain and reduce spinal mobility,[20] leading to postural limitations.  In visits after Dr. Payne's opinion,  Dr. Valencia Andrews-Pirtle found lumbar paraspinal tenderness.[21]  Paraspinal tenderness causes low back pain and reduces a person's ability to bend.[22]  This, in turn, leads to postural limitations.  The evidence about degenerative changes in the spine and paraspinal tenderness supported the RFC reduction from medium work to light work with postural limitations, but no medical evidence supported further reduction.

The record does not support the argument that asthma prevented Mr. Spinks from doing light work because the medical evidence showed that smoking, not exertion, caused his asthma attacks.  After losing his medical insurance from unemployment, Mr.

---

[19]SSA record at p. 279.

[20]*See* The Gale Encyclopedia of Med. 3183-84 (4th ed.) (discussing the effects of degenerative changes—aching joint pain, stiffness, and loss of mobility).

[21]SSA record at pp. 381 (Feb. 14, 2011); 283 (Mar. 17, 2011); p. 373 (July 12, 2011); p. 370 (Sept. 20, 2011).

[22]*See* 1-14 Courtroom Med. - The Low Back § 14.20 (Matthew Bender & Co., Inc.) ("Paraspinal muscle impairment is common in patients with low back pain and is manifested by reduced strength and endurance."); *id*. at § 13.30 ("[S]pasm of the lumbar paraspinal muscles…painfully restricts the motion of the spine….").

Spinks went to the emergency room for shortness of breath.[23]  The emergency room physician found shortness of breath, congestion, and wheezing.[24]  Mr. Spinks was admitted for intravenous steroids, updraft breathing treatments, and oxygen, and was discharged the following day.[25]

At that time, Mr. Spinks was smoking a pack of cigarettes per day.[26]  "Inhaling tobacco smoke, either by smoking or being around people who are smoking, can irritate the airways and trigger an asthmatic attack."[27]  Before his hospital discharge, Mr. Spinks was advised about the consequences of continuing to smoke.[28]  He later reported that he ceased smoking.[29]

The record documented no further emergency room visits for shortness of breath.  The absence of such documentation, the cessation of smoking, and Mr. Spinks's

---

[23]SSA record at p. 294 (on May 5, 2011).

[24]*Id*. at p. 302.

[25]*Id*. at pp. 301-03.

[26]*Id*.

[27]1 The Gale Encyclopedia of Med. 504 (4th ed.).

[28]SSA record at p. 288.

[29]*Id*. at p. 33 (testifying on July 5, 2011).

reports of no physical exertion,[30] indicate smoking caused his asthma attacks, not physical exertion.

The only suggestion that exertion caused asthma attacks was Mr. Spinks's complaint after the ALJ issued the unfavorable decision.[31]  To the extent Mr. Spinks maintains that complaint requires reversal, the record contains no medical evidence—for example, the results of testing before and after exercise—showing that exertion caused asthma attacks.  Substantial evidence supports the ALJ's determination that asthma did not prevent Mr. Spinks from doing light work within the defined parameters.  The ALJ did not err in determining Mr. Spinks's RFC.

**Credibility**.  Without medical evidence to substantiate his claims, Mr. Spinks's argument depends on his credibility.  The ALJ determined that Mr. Spinks was less than fully credible.  Mr. Spinks challenges the ALJ's assessment of his testimony.[32]  He maintains that the record supported his allegation of disabling pain and respiratory problems.

---

[30]*Id*. at 197-99 & 202 (reporting that he did no chores or strenuous activity, relaxed as much as possible, and laid down a lot).

[31]*Id*. at p. 370 (on Sept. 20, 2011).

[32]Docket entry # 12, pp. 11-13.

To evaluate Mr. Spinks's credibility, the ALJ followed the required two-step process[33] and considered the required factors.[34]  Thus, the question before the court is whether substantial evidence supports the ALJ's credibility evaluation.  The ALJ did not question that Mr. Spinks experienced pain and respiratory problems, but determined that those conditions were not so severe as to prevent him from doing light work within defined boundaries.  The ALJ thoroughly discussed why the medical evidence did not support the alleged degree of limitation.[35]

Substantial evidence supports the ALJ's credibility assessment because no medical evidence substantiated the alleged degree of severity.  For example, Mr. Spinks testified that his hands swell and prevent him from picking up anything but his

---

[33]*See Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996).

[34]In considering the credibility a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

[35]SSA record at pp. 17-21.

medicine,[36] but Mr. Spinks's doctors never reported swelling.[37]   The absence of

corroborating medical observations weighed against Mr. Spinks's credibility and

supported the ALJ's credibility assessment.

In addition, the ALJ may discount a claimant's subjective complaints if there are

inconsistencies in the evidence as a whole.[38]   Here, the record contained inconsistencies

weighing against Mr. Spinks's credibility.  For example, Mr. Spinks testified that he

stopped working as a cook because of his medical conditions[39]; but when he applied for

disability benefits, he reported that he had been laid off.[40]   The inconsistencies in the

record and the absence of corroborating medical observations weigh against Mr.

Spinks's credibility and support the ALJ's credibility assessment.  The ALJ did not err.

---

[36]*Id*. at pp. 35-36.  *See also id*. at pp. 176 (stating his hands swell and feel like they are paralyzed); p. 207 (complaining about swollen left hand); p. 222 (stating his right hand locks up and left hand swells); p. 237 (asserting his hands swell).

[37]*Id*. at p. 261 (no swelling on Mar. 8, 2010); p. 271 (no edema—that is, swelling—on Oct. 11, 2010); p. 381 (no swelling on Feb. 14, 2011); p. 376 ( no swelling or edema on Mar. 17, 2011); p. 373 (no edema on July 12, 2011); p. 370 (no edema or swelling on Sept. 20, 2011).

[38]*Polaski*, 739 F.2d at 1322.

[39]SSA record at pp. 36-37.

[40]*Id*. at p. 176.  *See also id*. at p. 38 (testifying he was laid off and told not to come back until he got a doctor's excuse saying how long he could work).  There is no doctor's excuse in the record, nor is there a treatment record for a fall.  The only mention of a fall is in a treatment record for an emergency room visit on Nov. 19, 2008. At that time, Mr. Spinks reported falling at work five months before the emergency room visit.  *See id*. at p. 246.

**Record development**.  Mr. Spinks challenges the ALJ's development of the record with respect to his mental impairment.[41]  Mr. Spinks did not specify what the ALJ should have done, but complained about the effects of depression.  Presumably, he meant that the ALJ should have ordered a consultative psychiatric or psychological exam.

"The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."[42]  In this case, the ALJ had sufficient medical evidence to determine whether Mr. Spinks was disabled due to depression because his medical records showed medication controlled his depression.

Significantly,[43] Mr. Spinks did not base disability on depression in applying for disability benefits,[44] but later complained about depression flowing from pain.[45]  There

----

[41]Docket entry # 12, pp. 15-16.

[42]*Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994).

[43]*See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (characterizing the failure to allege depression in application for disability benefits—even though evidence of depression was later developed—as "significant" in determining whether depression was a severe impairment).

[44]*See* SSA record at p. 177 (Sept. 3, 2009 description of conditions preventing him from working).

[45]*Id*. at p. 202 (stating, on Sept. 18, 2009, that being in pain all the time was depressing); p. 237 (reporting on May 2, 2011 that he took medication for depression); p. 45 (testifying on July 5, 2011 that his depression was getting worse).

was little medical evidence about depression.  An emergency-room treatment record
indicated that Dr. Pirtle prescribed a psychotropic drug for depression two-and-a-half
years after Mr. Spinks's alleged on-set date.[46]  Dr. Pirtle's treatment records reflect no
additional treatment—only the refilling of the same prescription.[47]

The failure to prescribe additional treatment—for example, psychological
therapy or medication changes—indicates that the prescribed medication controlled Mr.
Spinks's depression.  Because the treatment records showed that his depression was
controlled, there was no reason for the ALJ to order a psychiatric or psychological
examination.  The record contained sufficient medical evidence for determining
whether Mr. Spinks was disabled due to depression.  The ALJ did not err by not
ordering an examination.[48]

---

[46]*Compare id*. at p. 302 (listing Fluoxetine—a drug used to treat depression—as a
home medication on May 5, 2011), *with id*. at pp. 146 & 146 (alleging disability began on
July 1, 2008).

[47]*Id*. at p. 374 (refilling Fluoxetine on July 12, 2011); p. 370 ( refilling Fluoxetine on
Sept. 20, 2011).

[48]*Accord Hensley v. Barnhart,* 352 F.3d 353, 357 (8th Cir. 2003) (stating prescription
of anti-depressants on at least one occasion was insufficient reason to order
psychological evaluation; claimant did not base disability on depression, complain
about depression during his hearing, or seek professional mental health treatment, and
was never referred to professional mental health treatment); *Matthews v. Bowen*, 879
F.2d 422, 424-25 (8th Cir. 1989) (determining ALJ did not err in evaluating claimant's
psychological complaints without a consultative exam; claimant did not allege she was
disabled due to mental impairment and only evidence of an emotional problem was
testimony about suffering from "nerves" and the prescription of an anti-depressant;

**Hypothetical question**.  The ALJ relied on vocational expert testimony in determining that Mr. Spinks could make a successful adjustment to light work in jobs existing in significant numbers in the national economy.[49]  Mr. Spinks contends that the determination is not supported by substantial evidence because the ALJ did not include all of his limitations in a hypothetical question to the vocational expert.[50]

"A hypothetical is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ."[51]  Mr. Spinks maintains that pain, asthma, and COPD limited him to sedentary work[52] and complains that the ALJ questioned the vocational expert about light work.

The ALJ's question was proper because the medical evidence showed that Mr. Spinks could do more than sedentary work and because the ALJ did not accept all of Mr. Spinks's statements as true.  Because substantial evidence supports the determination that Mr. Spinks could do light work, as well as the credibility assessment,

---

treating physicians did not mentioned emotional impairment and consulting physicians did not note anxiety during medical examinations).

[49]SSA record at pp. 22-23.

[50]Docket entry # 12, pp. 13-15.

[51]*Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).

[52]Being limited to sedentary work is important because Mr. Spinks would be disabled under the medical-vocational guidelines if he could do only sedentary work.

the ALJ posed a properly phrased hypothetical by asking about light-work jobs and including limitations flowing from degenerative joint disease, COPD, and depression.[53]

Responding to the hypothetical question, the vocational expert testified that a person at Mr. Spinks's age, with his level of education and RFC, could work as a production assembler or clothing sales attendant.  The vocational expert testified that those jobs exist in significant numbers in the national economy; respectively, 11,000 in Arkansas and 583,000 nationwide; and 2,700 in Arkansas and 335,000 nationwide.[54] Because a vocational expert's testimony answering a properly phrased hypothetical question constitutes substantial evidence, the ALJ's determination is supported by substantial evidence.[55]  The ALJ did not err by omitting Mr. Spinks's subjective complaints from the hypothetical question.

**Conclusion**.  Substantial evidence supports the ALJ's decision denying Mr. Spinks's applications.  The ALJ made no legal error.  For these reasons, the court

---

[53]*See* SSA record at p. 48 (including no overhead reaching; no exposure to dust, fumes, or gases; occasional stooping, crouching, crawling or kneeling; no balancing, climbing, or exposure to hazards such as unprotected heights, moving machinery or open flames; and limiting work involving job skills learned by observation and experience, few variables, limited judgment, little supervision for routine tasks and detailed supervision for non-routine tasks).

[54]SSA record at p. 46.

[55]*Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011).

DENIES Mr. Spinks's request for relief (docket entry # 2) and AFFIRMS the decision

denying the applications.

It is so ordered this 1st day of October, 2012.

_____
UNITED STATES MAGISTRATE JUDGE